IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LATASHA HANDY, ET AL.                                    PLAINTIFFS


VS.                        CIVIL ACTION NO. 3:16-cv-370-WHB-JCG


MADISON COUNTY, MISSISSIPPI; ET AL.                      DEFENDANTS


## OPINION AND ORDER

This cause is before the Court on two motions that have been
filed in this wrongful death action.  Having considered the
pleadings, attachments thereto, as well as supporting and opposing
authorities the Court finds:

Plaintiffs' Motion for Summary Judgment-Related Discovery is
not well taken and should be denied.

Defendants' Motion for Summary Judgment on the grounds of
qualified immunity is well taken and should be granted.


## I.  Factual Background and Procedural History

On September 5, 2015, Willie Handy, Jr., died while detained
at the Madison County Detention Center ("MCDC") following an asthma
attack.  Thereafter, Latasha Handy ("Handy"), on behalf of herself
and Willie Handy's heirs and wrongful death beneficiaries, filed a
lawsuit against Madison County, Mississippi, Madison County Sheriff
Randy Tucker, and MCDC Officers Master Sargent Jamal Watkins
("Watkins"), Jeremiah Thornton ("Thornton"), John Wingard

("Wingard"), and Felicia Adams ("Adams").  In her Complaint, Handy alleges, *inter alia*, that "Defendants unlawfully battered, applied mace, and choked Willie Handy., Jr., causing his asthma to flare intensely resulting in his death."  Second Am. Compl. [Docket No. 25], ¶ 9.  Handy also alleges that the defendants failed to (1) provide necessary medical attention to Willie Handy, (2) adequately train personnel to promptly identify individuals who are having asthma attacks, and (3) promptly respond to Willie Handy's requests for medical care.  Based on these allegations, Handy seeks actual and punitive damages on claims under 42 U.S.C. § 1983 and state law claims sounding in negligence.[1]

During the course of litigation, Officers Watkins, Thornton, and Wingard, filed a Motion for Summary Judgment on any claims alleged against them in their individual capacities on the grounds they are immune from such claims.  The pleadings on the Motion for Summary Judgment provide the following facts with respect to the events that preceded Willie Handy's death.

Willie Handy had been detained at the MCDC numerous times between May of 1995, and September of 2015.  See Mot. for Sum. J. [Docket No. 35], Ex. A (McNeal Aff.), ¶ 1.  Willie Handy's last period of detention began on July 19, 2015, and ended with his death on September 5, 2015.  Id. at ¶ 3.  There is no evidence

---

[1]  As Handy has alleged claims arising under federal law, the Court may exercise federal subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331.

before the Court that Willie Handy was choked or maced at any time during his final period of detention. Id. at ¶¶ 3, 5.[2] In other words, Handy has not provided any evidence to either contradict the averments made by Major McNeal with respect to whether Willie Handy was ever choked or maced during his last period of detention at the MCDC, or to show that Willie Handy had been choked and/or maced during that time period.

According to Officer Thornton, Willie Handy had been housed in area "C4" while detained at the MCDC so he would be closer to the medical unit. Id., Ex. C (Thornton Aff.), ¶ 2. Willie Handy had a long history of asthma, and received respiratory treatments for that disease. See id. Ex. B (Palmer Aff.), ex. 1 at 35 (indicating that Willie Handy had a documented medical history of asthma from at least December of 2011). On September 5, 2015, Officer Watkins spoke with Willie Handy at approximately 4:00 p.m., at which point Willie Handy did not appear in any distress. Id., Ex. E (Watkins Aff.), ¶¶ 2, 3. Sometime thereafter, Willie Handy told Thornton he wanted to go to the medical unit to have a breathing treatment because his chest felt "tight". Id., Ex. C (Thornton Aff.), ¶ 3. Willie Handy did not appear to be in any distress at that time. Id.

---

[2] Willie Handy was once sprayed with mace at the MCDC during an altercation on April 26, 2015. The altercation occurred during a period of detention that began on March 13, 2015, and ended on May 13, 2015. Following the altercation, Willie Handy had no acute complaints, no signs of distress, and his oxygen level was 99%. Id., Ex. A, exs. 1 and 2.

at ¶ 4.   Thornton contacted the medical unit, and was advised that
Willie Handy could be brought down for a breathing treatment once
the female detainees had left the unit.    Id. at ¶ 5.   Officer
Wingard later escorted Willie Handy to the medical unit at
approximately 6:15 p.m.   Id., Ex. D (Wingard Aff.), ¶ 3.   At that
time, Willie Handy did not appear to be experiencing any breathing
problems, and was not showing any signs of distress.   Id.  See also
id., Ex. C (Thornton Aff.), ¶ 7 (Thornton averring he witnessed
Willie Handy being escorted to the medical unit, and that Willie
Handy was not in any distress at that time).

Willie Handy presented at the medical unit at approximately
6:17 p.m., complaining of shortness of breath and wheezing, and
requesting a new inhaler and breathing treatment.    Id., Ex. B
(Palmer Aff.), ¶¶ 4, 5.   Willie Handy was assessed by Sheoashie
Palmer, R.N. ("Palmer"), who measured his heart rate to be 95 beats
per minute, his respiratory rate to be 20 breaths per minute, and
his oxygen saturation level to be 95%.   Id. at ¶ 8.   Although
Willie Handy had some wheezing, he indicated he was "fine" and
could wait for his breathing treatment.   During the time the
breathing treatment was later being administered, Willie Handy did
not appear to be in any distress.   Id. at Ex. C (Thornton Aff.), at
¶ 9 (Thornton averring that at the time Willie Handy was being
given the breathing treatment, he was watching the people passing
by the medical unit, talking to the nurse, and was not displaying

4

any signs of distress).  There were no changes in Willie Handy's vital signs after the breathing treatment was given, and he was kept near the medical unit for observation.  Id., Ex. B (Palmer Aff.), ¶¶ 8, 9.

While under observation, Willie Handy developed labored breathing at which point he was brought back to the medical unit. Id. at ¶ 10.  At that point, while there were no changes in his heart or respiratory rate, Willie Handy's oxygen saturation level was measured at 82%.  Id. at ¶ 11.  Palmer immediately began giving Willie Handy a second breathing treatment.  Id. at ¶ 12.  During this treatment, Willie Handy became diaphoretic and restless and was given a Decadron (steroid) injection. Id. at ¶ 13.  Thereafter, Willie Handy became unresponsive, and Palmer immediately began to perform CPR and requested that an ambulance be called.  Id. at ¶ 15.

The next time Watkins, Thornton, and/or Wingard saw Willie Handy was after the three were summoned to the medical unit.  Upon their arrival, Willie Handy was being administered CPR by the medical staff.  Id., Ex. E (Watkins Aff.), ¶¶ 6, 7; Id., Ex. D (Wingard Aff.), ¶¶ 4, 5; Id., Ex. C (Thornton Aff.), ¶ 10. Thornton accompanied Willie Handy both in the ambulance where emergency medical technicians continued to perform CPR, and in the emergency room where Willie Handy was declared dead.  Id., Ex. C (Thornton Aff.), ¶¶ 12, 13.  Watkins, Thornton, and Wingard each

aver that they never choked or maced Willie Handy, and never witnessed such actions being taken against Willie Handy by any other officer. <u>Id.</u>, Ex. E at (Watkins Aff.), ¶ 10; <u>Id.</u>, Ex. D (Wingard Aff.), ¶6; <u>Id.</u>, Ex. C (Thornton), ¶¶ 14, 15. The cause of Willie Handy's death was identified as "Acute Asthma Exacerbation (Status Astematicus)". <u>See</u> Resp. [Docket No. 40], Ex. D.

The Court now considers the motions before it.


## II.  Discussion

### A.  Motion for Summary Judgment-Related Discovery

In addition to responding to the Motion for Summary Judgment, Handy has requested leave to conduct summary judgment-related discovery. The United States Court of Appeals for the Fifth Circuit permits immunity-related discovery in cases in which "the defendant's immunity claim turns at least partially on a factual question", "the district court is unable to rule on the immunity defense without further clarification of the facts", and the discovery requested is "narrowly tailored to uncover only those facts needed to rule on the immunity claim [and] are neither avoidable nor overly broad." <u>Lion Boulos v. Wilson</u>, 834 F.2d 504, 507-08 (5th Cir. 1987). Here, Handy seeks leave to (1) conduct discovery to "fully ascertain each and every officer, jailer, medical provider, and other possible witnesses present at MCDC" at the time of Willie Handy's death; (2) depose multiple individuals

including the responding paramedics, the coroner, and the medical examiner who performed Willie Handy's autopsy; and (3) subpoena unedited surveillance video and investigatory files from the Madison County District Attorney as well as the Mississippi Bureau of Investigation. Mot. for Discovery [Docket No. 39], Ex. A, ¶¶ 2, 6.[3] The Court finds these requests should be denied because they are clearly overly broad in that they seek information that has not been shown to have any bearing on the claim of immunity raised on summary judgment. Handy also seeks discovery to determine whether the actions of any of the summary judgment movants were motivated by policy or practice, and/or to "test the strength and credibility" of their affidavits. Id. at ¶¶ 3-4. The Court finds these requests should likewise be denied because the defense of qualified immunity is predicated on the individual conduct of the state actor, and the Court does not make credibility determinations on summary judgment.

In sum, although Handy argues that she is in need of additional discovery in order to respond to the immunity defenses raised on summary judgment, such general statement of need is insufficient to warrant Rule 56(d) discovery. See Krim v. BancTexasGroup, Inc., 989 F.2d 1435, 1442 (5th Cir. 1993)

---

[3] According to Movants, the surveillance video produced to Handy was not edited, and neither the Madison County District Attorney nor the Mississippi Bureau of Investigations undertook any investigation into Willie Handy's death. Resp. [Docket No. 43], Ex. 2.

(explaining that "vague assertions that additional discovery will produce needed, but unspecific facts" does not warrant discovery under Rule 56(d)). Accordingly, the Court will deny Handy's Motion for Discovery.

**B.   Motion for Summary Judgment**

**1.   Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if the record demonstrates that no genuine issue of material fact exists. It is improper for the court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper if the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).


**2. Analysis**

**a. Federal Law Claims**

Thornton, Watkins, and Wingard have moved for summary judgment on Handy's federal law claims under 42 U.S.C. § 1983, to the extent

9

those claims are alleged against them in their individual
capacities, on the grounds of qualified immunity. Under the
doctrine of qualified immunity, "government officials performing
discretionary functions generally are shielded from liability for
civil damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known." Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982). When considering motions raising a qualified
immunity claim, courts apply a two-step analysis. First, the Court
must determine whether, "viewing the summary judgment evidence in
the light most favorable to the plaintiff, the defendant violated
the plaintiff's constitutional rights." See Freeman v. Gore, 483
F.3d 404, 410 (5th Cir. 2007)(other citations omitted). If there
is no showing that the plaintiff's constitutional rights were
violated, the analysis ends. Id. at 410-11. If, however, a
constitutional rights violation is shown, the court must then
consider "whether the defendant's actions were objectively
unreasonable in light of clearly established law at the time of the
conduct in question." Id. at 411 (citing Tarver v. City of Edna,
410 F.3d 745, 750)(5th Cir. 2005)(other citations omitted). In
making this determination, the Court applies an "objective standard
based on the viewpoint of a reasonable official in light of the
information then available to the defendant and the law that was
clearly established at the time of the defendant's actions." Id.

10

(citing Tarver, 410 F.3d at 750 ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.")).

In her Complaint, Handy alleges that the defendants violated Willie Handy's rights as protected by the Eighth/Fourteenth Amendment by denying/delaying his access to adequate medical care.[4]

> Although the Eighth Amendment "does not, by its precise words, mandate a certain level of medical care for prisoners," Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), the Supreme Court has interpreted it as imposing a duty on prison officials to "ensure that inmates receive adequate ... medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an "unnecessary and wanton infliction of pain." Wilson v. Seiter, 501 U.S. 294, 297 (1991). The mere delay of medical care can also constitute an Eighth Amendment violation but only "if there has been deliberate indifference [that] results in substantial harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006).

Beginning with Sargent Watkins, the record shows that he spoke

---

[4] The United States Court of Appeals for the Fifth Circuit has held that the "State owes the same duty under the Due Process Clause [of the Fourteenth Amendment] and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir. 1996).

to Willie Handy at approximately 4:00 p.m. on September 5, 2015, at which point Willie Handy was not in any distress, and had his inhaler with him.  See Mot. for Sum. J., Ex. E (Watkins Aff.), ¶ 2-3.  Watkins also avers that after being informed that Willie Handy requested to go to the medical unit, he (Watkins) instructed Wingard to escort Willie Handy to the unit.  Id. at ¶ 4.  Finally, Watkins avers that he did not choke or apply mace to Willie Handy. Id. at ¶ 10.

In response to the Motion for Summary Judgment, Handy has submitted a report from her expert witness, Deaunte B. Thompson, M.D., who opines that Willie Handy's death resulted because "mace was applied which triggered Mr. Handy's Asthma [and] then he suffered an asthma attack leading to Status Asthmaticus and suffocating resulting in his untimely death."  See Resp. [Docket No. 40], Ex. E (Thompson Report).  Dr. Thompson also opines that Willie Handy's death "is a result of not seeking the appropriate medical care" and that had Willie Handy been given "an Albuterol inhaler or transferred to an acute care facility where an Albuterol nebulization treatment could have been administered", he would not have died.  Id.  Finally, Dr. Thompson opines that "there was an unwarranted delay or denial of medical care that caused or contributed to Willie Handy's death."  Id.[5]

---

[5]  As discussed below, there is no evidence in the record to show that Watkins, Thornton or Wingard choked or maced Willie Handy prior to his fatal asthma attack.  Likewise, there is no

Based on the evidence before it, the Court finds Handy has failed to show that there exists a genuine issue of material fact with respect to whether Watkins acted with deliberate indifference to Willie Handy's medical needs.  First, with respect to Dr. Thompson's opinion that Willie Handy died because he was subjected to mace that caused him to suffer an asthma attack, there is no evidence that Watkins either choked or maced Willie Handy prior to the asthma attack, or otherwise engaged in any activity that allegedly triggered that attack.  See Mot. for Sum. J., Ex. E. (Watkins Aff.), ¶ 10.  There is likewise no evidence that Watkins was aware of any other individual's having choked or maced Willie Handy.  Id.  Second, with respect to Dr. Thompson's opinions that Willie Handy's death resulted because he was not provided timely medical care in the form of inhaler or nebulizer treatments, there is no evidence that Watkins had taken any action to either delay or deny Willie Handy's access to medical care.  To the contrary, the record shows that when Watkins saw Willie Handy at 4:00 p.m., Willie Handy was not in any distress and had his inhaler with him. Id. at ¶ 2-3.  Then, after being informed that Willie Handy requested to go to the medical unit, Watkins arranged for him to be

---

evidence that Watkins, Thornton or Wingard purposefully denied and/or delayed Willie Handy's access to medical treatment.  Thus, the Court finds that Dr. Thompson's opinions that Willie Handy's asthma was triggered because he was subjected to mace, that he was not timely provided medical treatment for the asthma attack, and that the delay in treatment resulted in his death, have not been shown to be applicable to these three particular defendants.

13

escorted to the unit where he was given a respiratory and other medical treatment by Palmer.  Id. at ¶ 4.

Having reviewed the record, the Court finds there is no evidence that Watkins's actions either caused Willie Handy to suffer the asthma attack, or that he denied or delayed Willie Handy's request to go to the medical unit for a breathing treatment.  Because there does not exist a genuine issue of material fact with respect to whether Watkins deprived and/or delayed Willie Handy's access to adequate medical care, the Court finds Watkin's cannot be held individually liable on the Section 1983 claims alleged against him under the doctrine of qualified immunity.

As regards Sargent Wingard, the record shows that he escorted Willie Handy and several other male prisoners to the medical unit at approximately 6:15 p.m. on September 5, 2015.  See Mot. for Sum. J., Ex. D (Wingard Aff.), ¶ 3.  At that time, Willie Handy was not exhibiting any signs of distress and was not experiencing any breathing problems.  Id. at ¶ 3.  Wingard also avers that he did not choke or apply mace to Willie Handy.  Id. at ¶ 6.

Based on the evidence before it, the Court finds Handy has failed to show that there exists a genuine issue of material fact with respect to whether Wingard acted with deliberate indifference to Willie Handy's medical needs.  First, there is no evidence that Wingard either choked or maced Willie Handy prior to the asthma

14

attack, or otherwise engaged in any activity that allegedly caused that attack.  See id. ¶ 6.  There is likewise no evidence that Wingard was aware of any other individual's having choked or maced Willie Handy.  Id.  Second, there is no evidence that Wingard had taken any action to either delay or deny Willie Handy's access to medical care.  The record shows that while Wingard escorted Willie Handy to the medical unit for the purpose of receiving a breathing treatment, and that Willie Handy was not exhibiting any distress or breathing problems while being escorted.

Having reviewed the record, the Court finds there is no evidence that Wingard's actions either caused Willie Handy to suffer the asthma attack, or that he denied or delayed Willie Handy's requests to go to the medical unit.  Because there does not exist a genuine issue of material fact with respect to whether Wingard deprived and/or delayed Willie Handy's access to adequate medical care, the Court finds Wingard cannot be held individually liable on the Section 1983 claims alleged against him under the doctrine of qualified immunity.

Finally, as regards Officer Thornton, the record shows that Willie Handy requested to be taken to the medical unit for a breathing treatment because his chest was starting to feel tight. See Mot. for Sum. J., Ex. C (Thornton Aff.), ¶ 3.  At that time, Willie Handy was watching television, and was not exhibiting any signs of distress.  Id. at ¶ 4. Thornton then contacted the medical

unit for permission to bring Willie Handy for the requested treatment, and was told that Willie Handy could be brought after the female inmates left the unit. Id. at ¶ 6. Thornton avers that when he saw Willie Handy later being escorted to the medical unit, Handy was not in any distress, and was carrying his inhaler. Id. at ¶ 7. Thornton also saw Willie Handy while the latter was receiving his breathing treatment in the medical unit, and again Willie Handy was not exhibiting any signs of distress. Id. at ¶ 9. Finally, Thornton avers that he did not choke or apply mace to Willie Handy. Id. at ¶¶ 14-15.

Based on the evidence before it, the Court finds Handy has failed to show that there exists a genuine issue of material fact with respect to whether Thornton acted with deliberate indifference to Willie Handy's medical needs. First, there is no evidence that Thornton either choked or maced Willie Handy prior to the asthma attack, or otherwise engaged in any activity that allegedly caused that attack. See id. ¶ 14. There is likewise no evidence that Thornton was aware of any other individual's having choked or maced Willie Handy. Id., ¶ 15. Second, there is no evidence that Thornton had taken any action to either delay or deny Willie Handy's access to medical care. The record shows that Thornton contacted the medical unit for permission to bring Willie Handy for a breathing treatment after Handy requested a treatment, and that Willie Handy was not exhibiting any distress or breathing problems

at the time.  Willie Handy was likewise not exhibiting any breathing problems when Thornton later saw him, first being escorted to the medical unit (while carrying his inhaler with him), and second receiving the breathing treatment.  Because there does not exist a genuine issue of material fact with respect to whether Thornton deprived and/or delayed Willie Handy's access to adequate medical care, the Court finds Thornton cannot be held individually liable on the Section 1983 claims alleged against him under the doctrine of qualified immunity.

Having found that there does not exist a genuine issue of material fact with respect to whether Watkins, Wingard and/or Thornton allegedly caused Willie Handy to suffer an asthma attack, or took any action to delay or deny Willie Handy's access to medical treatment, the Court finds their Motion for Summary Judgment on the grounds of qualified immunity should be granted, and the federal law claims alleged against them in their individual capacities should be dismissed.

**b.  State Law Claims**

Watkins, Thornton and Wingard have moved for summary judgment on the state law negligence claims alleged against them.  Under Mississippi law, the Mississippi Tort Claims Act ("MTCA"), codified at Mississippi Code Ann. Section 11-46-1, *et seq.*, provides the exclusive civil remedy for tort actions against the state, its

17

political subdivisions, and its employees.  See Miss. Code Ann. § 11-
46-7(1).  See also City of Jackson v. Harris, 44 So.3d 927, 932
(Miss. 2010) ("[T]he MTCA provides the exclusive civil remedy for
tort actions against the state, its political subdivisions, and its
employees."  Watkins, Thornton and Wingard argue that they cannot
be held liable under the MTCA based on their occupations at the
MCDC, and the fact that Willie Handy was detained at that facility.
In support of this argument, Watkins, Thornton and Wingard cite
Mississippi Code Annotated Section 11-46-9, which provides in
relevant part:

>     (1) A governmental entity and its employees acting within
>     the course and scope of their employment or duties shall
>     not be liable for any claim:
>
>
>         ...
>
>     (m) of any claimant who at the time the claim arises is
>     an inmate of any detention center, jail, workhouse, penal
>     farm, penitentiary or other such institution, regardless
>     of whether such claimant is or is not an inmate of any
>     detention center, jail, workhouse, penal farm,
>     penitentiary or other such institution when the claim is
>     filed;

Miss. Code. Ann. § 11-46-9(1)(m).

Handy, however, argues that the movants can be held
individually liable under the MTCA if they were acting outside the
course and scope of their employment, i.e if their "conduct
constituted fraud, malice, slander, defamation or any other
criminal offense."  Miss. Code Ann. § 11-46-7(2).  In support of her

18

claim, Handy argues that Watkins, Thornton and Wingard acted with malice by (1) ignoring Willie Handy's obvious need for medical care, (2) failing to ensure that Willie Handy was provided an inhaler to keep with him, and (3) making him wait for his breathing treatment while other inmates were treated. None of these arguments are supported by the evidence in the record.

First, there is no evidence that Watkins, Thornton and/or Wingard ignored Willie Handy's request to be taken to the medical unit for a breathing treatment. Instead, the record shows that after Willie Handy requested to go to the medical unit, Thornton called the medical unit for permission to bring him for a treatment, Watkins instructed an officer to escort Willie Handy to the unit, and Wingard escorted him as directed. There is likewise no evidence that Willie Handy was in any acute distress during this time period. Second, there is no evidence that Willie Handy was not provided an inhaler that he could keep with him. The evidence shows that both Watkins and Thornton saw Willie Handy with his inhaler. Although Willie Handy told Palmer that his inhaler was empty when he presented at the medical unit, there is no evidence in the record showing that Willie Handy made any of these defendants aware that he needed a medication refill at any time. Finally, there is no evidence that Watkins, Thornton or Wingard made Willie Handy wait so that other inmates could be treated first. According to Palmer, she specifically asked Willie Handy if

19

he could wait for his breathing treatment after he was escorted to the medical unit, and Handy indicated that would be fine.  There is simply no evidence that Watkins, Thornton or Wingard made any decisions as to the timing of Willie Handy's breathing treatment after Handy was escorted to the medical unit.  Accordingly, the Court finds that Handy has failed to show that there exists a genuine issue of material fact with respect to whether Watkins, Thornton or Wingard are protected under the immunity provided by the MTCA.  The Court will, therefore, grant summary judgment as to the state law claims alleged against these defendants in their individual capacities.


### IV.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment Related Discovery [Docket No. 39] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendants Jamal Watkins, Jeremiah Thornton, and John Wingard for Summary Judgment [Docket No. 35] is hereby granted.

All federal and state law claims alleged against these defendants in their individual capacities are hereby dismissed.

SO ORDERED this the 25th day of July, 2017.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE